
RECEIVED
IN MONROE, LA
APR 1 6 2009
TONY R. MOORE, CLERK
WESTERN DISTRICT OF LOUISIANA

UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

MONROE DIVISION

| | |
|---|---|
| BOBBY BENSON, SR., ET AL. | CIVIL NO. 07-0672 |
| VERSUS | JUDGE ROBERT G. JAMES |
| GREG MCKINNEY, ET AL. | MAG. JUDGE KAREN L. HAYES |

RULING

Pending before the Court is a Motion for Summary Judgment [Doc. No. 24] filed by Defendants the Town of Delhi, the Town of Delhi Police Department ("DPD"), former DPD Chief of Police Greg McKinney ("McKinney"), DPD Assistant Chief of Police Willie Lee ("Lee"), and DPD Officer Marie Stubblefield ("Stubblefield"). Defendants move for summary judgment on the claims of Plaintiffs Bobby Benson, Sr. ("Mr. Benson") and Emma Benson ("Mrs. Benson"), individually and on behalf of their minor son, Bobby Benson, II.

For the following reasons, Defendants' Motion for Summary Judgment is GRANTED IN PART and DENIED IN PART.

I.  FACTUAL BACKGROUND[1]

Plaintiffs claim that beginning in 2001 and continuing until August 18, 2006, Defendants conspired to threaten, harass, intimidate, retaliate against, arrest, and attempt to prosecute Mr. Benson because of his race, African-American, and his actions as an alderman of the Town of Delhi.

---

[1] Plaintiffs did not point the Court to any evidence in opposition to Defendants' Motion for Summary Judgment. It is not the duty of this court to "sift through the record in search of evidence to support a party's opposition to summary judgment." *Forsyth v. Barr*, 19 F.3d 1527, 1537 (5th Cir. 1994). The Court has considered pertinent statements from Plaintiffs' verified Complaint [Doc. No. 1] that are not specifically disputed by Defendants.

1

As a result, Plaintiffs allege that they and their son have been damaged and continue to be damaged.

Plaintiffs allege that in 2003, Mr. Benson criticized McKinney and the DPD for engaging in racial profiling and hiring police officers with criminal records and "[in]sufficient integrity." [Doc. No. 1, ¶11].

On May 10, 2004, Mr. Benson publicly opposed a request to raise the amount of criminal fines in the Town of Delhi. [Doc. No. 1, ¶11].

On May 11, 2004, Mr. Benson was stopped by DPD Officer Jesse Nielson. Mr. Benson was issued a traffic citation for speeding; the citation alleged that Mr. Benson was traveling 41 miles per hour in a 35-mile-per-hour zone. Mr. Benson pled guilty and paid the fine.

On or about June 29, 2005, Zack McDowell, the chairman of a voter recall petition to remove McKinney as Chief of Police, was detained by the DPD on a public highway. Mr. Benson drove to the scene of the detention and was allegedly told by unnamed DPD officers to leave the scene or face arrest.

On July 6, 2005, Mr. Benson requested a copy of all the water bills for McKinney, based on information that McKinney, as an individual property owner, had not paid his water bill for several months. Mr. Benson claims that he encountered difficulty in obtaining the water bills.

Prior to and on July 11, 2005, Mr. Benson spoke out publicly against Defendants and led a protest at Delhi City Hall. Mr. Benson alleged that Defendants had taken illegal and abusive actions against the citizens of the Town of Delhi and Richland Parish.

Mr. Benson continued to speak out publicly against Defendants.

On November 12, 2005, Benson was elected to the Board of Aldermen for the Town of Delhi, District B.

On November 14, 2005, Lee, the Assistant Chief of Police, allegedly threatened Benson with substantial physical injury if Mr. Benson tried to interfere with the operation of the DPD.

On April 16, 2006, Mr. Benson filed a complaint with the DPD. Mr. Benson reported that he had entered a residence located at 113 Thomas Street in Delhi, which was owned by his deceased grandfather, and that someone was living there without permission and stealing electricity. Mr. Benson alleges that he entered the residence with his brother, Shelton Benson, and James Schaeffer. A radio and DVD player were removed from the residence. Officers Stubblefield and Cooper investigated Mr. Benson's complaint.

On April 18, 2006, a related incident complaint was filed by Byron Fletcher ("Fletcher"). Fletcher reported that someone had removed his radio and DVD player from his residence at 113 Thomas Street.

On April 19, 2006, Stubblefield arrested Mr. Benson on charges of theft and unauthorized entry. Prior to Mr. Benson's arrest, Stubblefield did not threaten Mr. Benson or suggest that he was being targeted. Apparently, Defendants alerted local media to the arrest.

On April 28, 2006, Stubblefield stopped Mrs. Benson for allegedly running a stop sign. Mrs. Benson was given a warning. Mrs. Benson was not threatened by Stubblefield during this traffic stop.

On August 18, 2006, McKinney pled guilty to various criminal charges against him.

On April 17, 2007, Plaintiffs filed suit against the Town of Delhi; the DPD; McKinney, in his official and individual capacity; Lee, in his official and individual capacity; and Stubblefield, in her official and individual capacity. [Doc. No. 1].

On January 22, 2009, Defendants filed a Motion for Summary Judgment [Doc. No. 24].

On April 6, 2009, Plaintiffs filed a memorandum in opposition [Doc. No. 36] and statement of material facts [Doc. No. 37]. Plaintiffs contend only that Defendants failed to meet their burden on summary judgment and do not dispute Defendants' statement of material facts.

## II. LAW AND ANALYSIS

### A. Summary Judgment Standard

A motion for summary judgment cannot be granted simply because there is no opposition. An unopposed motion seeking summary judgment shall be granted "if appropriate." FED. R. CIV. P. 56(e). Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c).

The moving party bears the initial burden of informing the court of the basis for its motion by identifying portions of the record which highlight the absence of genuine issues of material fact. *Topalian v. Ehrmann*, 954 F.2d 1125, 1132 (5th Cir. 1992). A fact is "material" if proof of its existence or nonexistence would affect the outcome of the lawsuit under applicable law in the case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute about a material fact is "genuine" if the evidence is such that a reasonable fact finder could render a verdict for the nonmoving party. *Id.* Unless the moving party meets this burden, the court may not grant the unopposed motion, regardless of whether any response was filed. *Hetzel v. Bethlehem Steel Corp.*, 50 F.3d 360, 362 (5th Cir. 1995).

### B. Claims by Mr. Benson

Mr. Benson claims that he was given a traffic citation and arrested as a result of racial

4

discrimination and political retaliation. Mr. Benson also claims that Defendants alerted the media to his arrest to embarrass and humiliate him. Mr. Benson cites 42 U.S.C. §§ 1981, 1983, 1985, and 1988, and claims he was falsely arrested and imprisoned and tortiously defamed. Mr. Benson also seeks a declaratory judgment that Defendants violated his due process, equal protection, and First Amendment rights.

Defendants contend that Mr. Benson has failed to establish violations of any right. Defendants also assert the defense of qualified immunity.

### 1. § 1981 Claims

Under a liberal construction of the Complaint, Mr. Benson contends that he was discriminated against because of his race when he was given a traffic citation for speeding on May 11, 2004, and when he was arrested for theft and unauthorized entry on April 19, 2006.[2]

Section 1981 provides that

> [a]ll persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens, and shall be subject to like punishment, pains, penalties, taxes, licenses, and exactions of every kind, and to no other.

42 U.S.C. § 1981(a). At the *prima facie* stage, "a plaintiff must establish '(1) that she is a member of a racial minority; (2) that [the defendant] had intent to discriminate on the basis of race; and (3) that the discrimination concerned one or more of the activities enumerated in the statute.'" *Arguello v. Conoco, Inc.*, 330 F.3d 355, 358 (5th Cir. 2003) (quoting *Morris v. Dillard Dep't Stores, Inc.*, 277

---

[2]To the extent that Mr. Benson seeks to hold all Defendants liable for race discrimination under § 1981 through § 1983, the Court notes that the claims against the Defendant-Officers in their official capacities merge with Mr. Benson's claim against the Town of Delhi.

F.3d 743, 751 (5th Cir. 2001)). The Court assumes that Mr. Benson relies on the "like punishments" clause. *See* 42 U.S.C. § 1981(a).

Defendants move for summary judgment solely on whether Mr. Benson can establish a *prima facie* case of racial discrimination. *See* [Doc. No. 24-2, p. 6]. Defendants primarily contend there is no evidence that they intended to discriminate against Mr. Benson because of his race. With respect to the traffic citation, Defendants rely on the fact that a majority of the officers of the DPD are African-American and on DPD Officer John Mejias's[3] testimony that he was not aware of any racial profiling and was never instructed to profile or arrest minorities more than Caucasians. Defendants also rely on Mr. Benson's testimony that the only evidence he has to suggest the citation was racially motivated are his "feelings" and the fact that he had traveled the same speed for many years at that location without receiving a citation. [Doc. No. 24-4, Exh. B. Part 1, pp. 28–29].

With respect to the arrest, Defendants argue that Stubblefield, who is African-American, had probable cause to arrest Mr. Benson for theft and unauthorized entry. Fletcher, who filed the complaint, and several other witnesses informed Stubblefield that they saw Mr. Benson remove the property from the house on Thomas Street. Stubblefield testified that she arrested Mr. Benson "based solely on [her] determination that [she] had probable cause to arrest him. . . . [She] was never asked by Chief Greg McKinney or anyone else at Delhi to discriminate against Bobby Benson, Sr." [Doc. No. 24-3, Exh. A, pp. 1–2].

The Court finds that there is no evidence to support an inference of race discrimination with respect to the traffic citation. Mr. Benson offers only his subjective beliefs that the issuance of the citation was racially motivated. However, the ticketing officer's race/ethnicity is not in evidence,

---

[3]Officer Mejias testified that he is one-half Mexican.

6

and Mr. Benson does not dispute that he was speeding and, therefore, that a citation was warranted.

With respect to the arrest, Mr. Benson disputes whether Defendants had probable cause to arrest him. Benson alleges that the arrest was racially motivated because "Defendants knew that Alderman Benson had permission to go into the residence at Thomas Street from his mother and from the other member of the Benson family"; "Defendants knew that the dwelling was legally unoccupied [sic], and thus it was not legally occupied by any owner, lessee, or other person who possessed the legal right to occupy the dwelling"; "Defendants knew that James Schaeffer, not Alderman Benson, took the radio and DVD player from the abandoned residence at Thomas Street"; and "Defendants knew that James Schaeffer was in possession of the abandoned property without intent to deprive the owner thereof, and that James Schaeffer and Alderman Benson intended to return the property to its owner." [Doc. No. 1, ¶¶44–49].

A review of Stubblefield's affidavit, the incident reports, and witness statements show that Stubblefield was aware when she arrested Mr. Benson that there was a dispute as to whether Fletcher was legally residing in the Thomas Street residence. However, for the reasons discussed *infra*, Stubblefield had probable cause to arrest Mr. Benson. Moreover, Mr. Benson has offered no evidence that the arrest was motivated by Mr. Benson's race or the race of his constituents, other than the fact that he is African-American, he represents African-Americans, and McKinney is Caucasian. The Court finds that this alone fails to support an inference of race discrimination.

Defendants' Motion for Summary Judgment on this claim is GRANTED.

### 2. § 1983 Claims

Mr. Benson contends that Defendants' actions deprived him of the right to be free from false arrest/imprisonment, the right to equal protection of the laws, the right to due process, and the right

to freedom of expression. Mr. Benson's claims are cognizable under § 1983.

> Section 1983 provides in pertinent part as follows:
>
> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . . .

42 U.S.C. § 1983. "To state a claim under § 1983, plaintiffs must allege two elements: first, that they were deprived of a right or interest secured by the Constitution and laws of the United States, and second, that the deprivation occurred under color of state law." *Doe v. Rains County Indep. Sch. Dist.*, 66 F.3d 1402, 1406 (5th Cir. 1995).

Defendants do not deny that they were acting under color of state law. However, Defendants deny that they deprived Mr. Benson of a constitutional right and contend that they are entitled to qualified immunity.

"Police officers, like other public officials acting within the scope of their official duties, are shielded from claims of civil liability, including § 1983 claims, by qualified immunity." *Morris v. Dillard Dept. Stores, Inc.*, 277 F.3d 743, 753 (5th Cir. 2001). In reviewing a police officer's claim of qualified immunity, the Supreme Court instructs that the court must engage in a two-step inquiry. The court must first address the constitutional issue: whether the facts alleged, "'[t]aken in the light most favorable to the party asserting injury,'" are sufficient to "'show the officer's conduct violated a constitutional right.'" *Brosseau v. Haugen*, 543 U.S. 194, 197 (2004) (per curiam) (quoting *Saucier v. Katz*, 533 U.S. 194, 201 (2001)). Assuming that the plaintiff has raised a genuine issue of material fact for trial on the constitutional issue, the court must then address the qualified immunity issue: whether it was clearly established that the officer was violating an individual's

constitutional rights. *Id.* at 199.

### a. False Arrest

Mr. Benson's allegations of false arrest are properly analyzed under cases interpreting the Fourth Amendment. *See Blackwell v. Barton*, 34 F.3d 298, 302 (5th Cir. 1994). "To ultimately prevail on his section 1983 false arrest/false imprisonment claim, [Mr. Benson] must show that [Defendants] did not have probable cause to arrest him." *Haggerty v. Tex. S. Univ.*, 391 F.3d 653, 655 (5th Cir. Tex. 2004). Probable cause exists if there was "reasonably trustworthy information...sufficient to warrant a prudent man in believing that [Mr. Benson] had committed or was committing an offense." *Beck v. Ohio*, 379 U.S. 89, 91 (1964).

The Court's analysis must begin with a review of the criminal statutes. Mr. Benson was charged with theft and unauthorized entry of a dwelling. *See* [Doc. No. 24-3, Exh. 1]. "Theft is the misappropriation or taking of anything of value which belongs to another, either without the consent of the other to the misappropriation or taking, or by means of fraudulent conduct, practices, or representations. An intent to deprive the other permanently of whatever may be the subject of the misappropriation or taking is essential." LA. REV. STAT. § 14:67. "Unauthorized entry of an inhabited dwelling is the intentional entry by a person without authorization into any inhabited dwelling or other structure belonging to another and used in whole or in part as a home or place of abode by a person." LA. REV. STAT. § 14:62.3.

At the time of Mr. Benson's arrest, the arresting officer, Stubblefield, had conflicting information regarding whether Fletcher was legally residing in the Thomas Street residence, and, therefore, whether Mr. Benson's entry was lawful. There was also conflicting information regarding whether Mr. Benson removed Fletcher's radio and DVD player from the residence and why Mr.

Benson removed that property from the residence. Even if the trier of fact believes Mr. Benson's version, the Court finds that there was probable cause to arrest Mr. Benson based on Fletcher's contention that Mr. Benson's grandmother had given him permission to live at the Thomas Street residence and the eyewitness statements that Mr. Benson removed the property from the residence and placed it in his truck. Mr. Benson has offered legitimate defenses to both charges—that he was permitted to enter the residence, that he did not remove the property from the residence, and that the person who removed the property did so to prevent damage to the property when the residence was torn down. However, the ultimate question is not whether the charges were defensible, but whether the arresting officer had probable cause. *See Baker v. McCollan*, 443 U.S. 137, 145 (1979) ("The Constitution does not guarantee that only the guilty will be arrested. If it did, § 1983 would provide a cause of action for every defendant acquitted-indeed, for every suspect released."); *see also Barfield v. State*, 05-2218, 2008 U.S. Dist. LEXIS 14317, at *21–24 (W.D. La. Feb. 25, 2008) (holding that conflicting evidence did not negate probable cause to arrest). The Court, therefore, finds that Mr. Benson has failed to show a violation of a clearly established right. Defendants' Motion for Summary Judgment on this claim is GRANTED.

### b. False Imprisonment/Due Process

Mr. Benson alleges that Defendants denied him due process. [Doc. No. 1, ¶52]. This allegation presumably refers to Mr. Benson's arrest and resultant deprivation of liberty; the allegations of Mr. Benson's Complaint do refer to nor support any other type of due process claim.

False imprisonment is cognizable under the Fourteenth Amendment due process clause and requires a showing that the defendant lacked probable cause to detain him. *See Thomas v. Kippermann*, 846 F.2d 1009, 1011 (5th Cir. 1988). Because the Court finds that the arrest was

supported by probable cause, Mr. Benson's subsequent detention was lawful.[4] Defendants' Motion for Summary Judgment on this claim is GRANTED.

### c. Equal Protection

Mr. Benson alleges that Defendants denied him equal protection under the law because of "his racial heritage, the racial heritage of his family, and the racial heritage of his political constituents." [Doc. No. 1, ¶53].

"To state a claim for racial discrimination under the Equal Protection Clause, the plaintiff 'must allege and prove that he received treatment different from that received by similarly situat[ed] individuals and that the unequal treatment stemmed from a discriminatory intent.'" *Gomiller v. Dees*, 06-33, 2007 U.S. Dist. LEXIS 23230, at *5 (N.D. Miss. Mar. 28, 2007) (quoting *Priester v. Lowndes County*, 354 F.3d 414, 424 (5th Cir. 2004)). Mr. Benson has not alleged nor offered proof that similarly situated individuals were subjected to less severe punishment. Moreover, as discussed above, Mr. Benson has failed to present evidence of discriminatory intent. Defendants' Motion for Summary Judgment on this claim is GRANTED.

### d. First Amendment

Under a liberal construction of the Complaint, Mr. Benson alleges that Defendants ticketed and arrested him in retaliation for the exercise of his First Amendment rights. *See* [Doc. No. 1, ¶¶14, 49, 54].

"The First Amendment prohibits not only direct limitations on speech but also adverse government action against an individual because of h[is] exercise of First Amendment freedoms." *Colson v. Grohman*, 174 F.3d 498, 508 (5th Cir. 1999). "Any form of official retaliation for

---

[4] Mr. Benson has not alleged that the duration of the detention was unlawful.

exercising one's freedom of speech, including prosecution, threatened prosecution, bad faith investigation, and legal harassment, constitutes an infringement of that freedom." *Izen v. Catalina*, 382 F.3d 566, 571 n.5 (5th Cir. 2004) (quotations and citations omitted). To establish a First Amendment retaliation claim, Mr. Benson must show: (1) he was engaged in constitutionally protected activity; (2) Defendants' actions caused him to suffer an injury "that would chill a person of ordinary firmness from continuing to engage in that activity"; and (3) Defendants' actions were substantially motivated against his exercise of constitutionally-protected activity. *Id.* (quotations and citations omitted).

With respect to the arrest, Mr. Benson's allegations may establish the first two elements of a First Amendment retaliation claim. Mr. Benson alleges that he was engaged in a number of constitutionally protected activities prior to his arrest, including a public protest. He also alleges that he was threatened with the loss of employment as a result of the arrest. [Doc. No. 1, ¶56]. With respect to the third element, Mr. Benson alleges that Defendants ticketed and arrested him because of his public criticism of the DPD. However, Mr. Benson has offered no evidence to support that claim, other than his subjective belief. In contrast, Defendants have offered Stubblefield's testimony that she did not consult with McKinney prior to the arrest and that the arrest was based solely on her belief that there was probable cause to arrest Mr. Benson. The Court, therefore, finds that Mr. Benson has failed to state a First Amendment retaliation claim based on his arrest.[5]

There is no dispute that the traffic citation was supported by probable cause. However, "[i]t

---

[5]Even if Mr. Benson could establish all three elements, there is some indication in the case law that a plaintiff cannot bring a First Amendment retaliation claim based on an **unlawful** arrest; the plaintiff is limited to bringing a claim for false arrest under the Fourth Amendment. *See Rhodes v. Prince*, 07-10278, 2008 U.S. App. LEXIS 7740 (5th Cir. April 9, 2008) (unpublished).

12

is well established that an act taken in retaliation for the exercise of a constitutionally protected right is actionable even if the act, when taken for a different reason, would have been proper." *Id.* at 572 (quotations and citations omitted). Mr. Benson was cited for speeding on May 11, 2004, the day after he publicly opposed a request to raise the amount of criminal fines in the Town of Delhi. Assuming *arguendo* that this constitutes circumstantial evidence of Defendants' intent to retaliate against Mr. Benson for engaging in constitutionally protected activity, Mr. Benson must establish that Defendants' actions caused him to suffer an injury that would chill a person of ordinary firmness from continuing to engage in that activity.

"[S]ome retaliatory actions–even if they actually have the effect of chilling the plaintiff's speech–are too trivial or minor to be actionable as a violation of the First Amendment." *Keenan v. Tejeda*, 290 F.3d 252, 258 (5th Cir. 2002). In addition, "any 'chill' of protected rights must be more than 'minimal' and not 'wholly subjective.'" *Johnson v. Rodriguez*, 110 F.3d 299, 314 (5th Cir. 1997) (citing *United States v. Ramsey*, 431 U.S. 606, 622–24 (1977)). Mr. Benson has not alleged that the ticketing officer threatened Mr. Benson or that the traffic stop was otherwise effectuated in an intimidating manner. *Cf. Keenan*, 290 F.3d at 259 (holding that two traffic stops "involving an undercurrent of violence" would have deterred a person of ordinary firmness). Mr. Benson has also not alleged that the issuance of the traffic citation caused him to forego any constitutionally protected activity; in fact, the allegations of the Complaint show that Mr. Benson continued to speak out against Defendants for the next two years. *Cf. Johnson*, 110 F.3d at 314 (relying on the lack of evidence that constitutionally protected activity "was actually foregone because of th[e] purported 'chill'"). The Court, therefore, finds that Mr. Benson has failed to state a First Amendment retaliation claim based on his traffic citation.

Defendants' Motion for Summary Judgment on this claim is GRANTED.

### 3. § 1985 Claim

Mr. Benson has alleged that Defendants conspired to falsely arrest and imprison him [Doc. No. 1, ¶55], as well as to chill his expression. [Doc. No. 1, ¶54].

> To state a claim under 42 U.S.C. § 1985(3), a plaintiff must allege: (1) a conspiracy involving two or more persons; (2) for the purpose of depriving, directly or indirectly, a person or class of persons of the equal protection of the laws; and (3) an act in furtherance of the conspiracy; (4) which causes injury to a person or property, or a deprivation of any right or privilege of a citizen of the United States. In so doing, the plaintiff must show that the conspiracy was motivated by a class-based animus.

*Hilliard v. Ferguson*, 30 F.3d 649, 652-653 (5th Cir. 1994) (citations omitted).

Defendants moved for summary judgment on the basis that Mr. Benson has not and cannot show an agreement among any of the Defendants or that the alleged conspirators were motivated by his race or a class-based animus. Defendants rely on DPD Officer Mejias's testimony about the lack of racial profiling; that Officer Mejias was not instructed by McKinney to arrest Mr. Benson; and that a majority of the DPD officers are African-American. Officer Mejias also testified that he never witnessed any racially slanderous comments by McKinney or any other officer about Mr. Benson or his family. Defendants have also offered Stubblefield's testimony, the arresting offer, that she arrested Mr. Benson solely because she believed there was probable cause and that she was never instructed by McKinney to discriminate against Mr. Benson.

Mr. Benson has offered no argument or evidence in response. Taken in the light most favorable to Mr. Benson, the allegations in his Complaint fail to raise a genuine issue of material fact for trial on any of the elements of the § 1985 claim. Defendants' Motion for Summary Judgment on this claim is GRANTED.

### 4. § 1988 Claim

Section 1988 provides for the recovery of attorney's fees to the prevailing party in an action under §§ 1981, 1983, or 1985. *See* 42 U.S.C. § 1988(b). Defendants move for summary judgment on Mr. Benson's § 1988 claim. Because the Court finds that Mr. Benson has failed to prevail under §§ 1981, 1983, and 1985, Defendants' Motion for Summary Judgment on this claim is GRANTED.

### 5. Defamation

Mr. Benson alleges that Defendants contacted media outlets about his arrest in an effort to embarrass him and that he was defamed as a result.

Defendants move for summary judgment on the basis that Mr. Benson, who is an alderman for the Town of Delhi, is a public official and, therefore, is prohibited from recovering damages for a defamatory falsehood related to his official conduct unless it is proven that the statement was made with "actual malice."

"Defamation requires proof of five elements in Louisiana law: (1) defamatory words; (2) publication; (3) falsity; (4) actual or implied malice; and (5) injury." *Tate v. Bradley*, 837 F.2d 206, 208 (5th Cir. 1988) (citing *Carter v. Catfish Cabin*, 316 So.2d 517, 521 (La. App. 1975)). The required state-of-mind is actual malice where the allegedly defamatory statements are made about a public official or figure. *See New York Times Co. v. Sullivan*, 376 U.S. 254, 279–80 (1964); *Curtis Publishing Co. v. Butts*, 388 U.S. 130, 162 (1967). A showing of "actual malice" requires proof that the alleged defamation was made "with knowledge that it was false or with reckless disregard of whether it was false or not." *New York Times Co.*, 376 U.S. at 279–80.

The Court notes that neither party has alleged or identified any "defamatory words." Mr. Benson alleges only that "Defendants took actions to inform the television stations and the local

15

newspapers, and to give media outlets visual access to Alderman Benson, while he was handcuffed and under arrest, to maximize the embarrassment, humiliation and damage to Alderman Benson from these false, illegal and unconstitutional arrests." [Doc. No. 1, ¶50]. Nor has either party alleged or identified any "publication." Assuming *arguendo* that these elements are met, and that Mr. Benson's theory of defamation is that Defendants falsely accused him of committing a criminal act, Mr. Benson's defamation claim still fails. Based on the foregoing analysis that there was probable cause for his arrest and thus a reasonable basis for accusing Mr. Benson of committing a criminal act, Mr. Benson cannot make the requisite showing of falsity or malice. Defendants' Motion for Summary Judgment on this claim is GRANTED.

### 6. Declaratory Judgment

Mr. Benson seeks a declaratory judgment that Defendants violated his due process, equal protection, and First Amendment rights.

Because the Court finds that Mr. Benson has failed to show a violation of those rights, Mr. Benson's declaratory judgment action is moot. Defendants' Motion for Summary Judgment on this claim is GRANTED.

### C. Claims by Mrs. Benson

Mrs. Benson claims that Defendants took illegal and unconstitutional actions against her. She primarily complains of an April 28, 2006 traffic stop. She also alleges that she was defamed and damaged as a result of the actions taken against her, Mr. Benson, and their son.

Mrs. Benson was stopped by Stubblefield for running a stop sign. Mrs. Benson denies that she ran the stop sign. Mrs. Benson was given a warning but not a citation. Mrs. Benson concedes that she was not threatened by Stubblefield during this traffic stop.

Under a liberal construction of the Complaint, Mrs. Benson's allegations support a claim for unlawful seizure under the Fourth Amendment, which is cognizable under § 1983. Defendants did not offer Stubblefield's testimony, so it is unclear why she stopped Mrs. Benson and thus whether she had individualized reasonable suspicion to effectuate the traffic stop. *See Terry v. Ohio*, 392 U.S. 1, 22 (1968); *see also Bush v. Parish of St. Tammany*, 754 F.2d 1132, 1136 (5th Cir. 1984) (upholding award of nominal damages for an unlawful seizure). The Court, therefore, finds that Defendants have failed to meet their burden, and their Motion for Summary Judgment on this claim against Stubblefield in her individual capacity is DENIED.[6] To the extent that Mrs. Benson seeks attorney's fees under § 1988, the Court DEFERS ruling on that claim, pending resolution of her § 1983 claim for unlawful seizure.

Defendants' Motion for Summary is GRANTED on Mrs. Benson's defamation claim. The Complaint sets forth no specific acts of defamation against her, and any derivative claim that she might assert for the defamation of her husband fails, for the reasons cited previously.

Defendants' Motion for Summary Judgment is GRANTED on any claim that Mrs. Benson asserts for damages resulting from Defendants' actions against Mr. Benson and their son. Her claim for damages is derivative, and for the reasons stated previously and *infra*, Mr. Benson and their son have not been damaged.

### D.     Claims by Mr. and Mrs. Benson on behalf of Bobby Benson, II

The Complaint alleges that Bobby Benson, II "was personally slandered, defamed,

---

[6]Mrs. Benson's claim against Stubblefield in her official capacity merges with her claim against the Town of Delhi, *Turner v. Houma Mun. Fire & Police Civil Serv. Bd.*, 229 F.3d 478, 483 (5th Cir. 2000), which fails for the reasons cited previously and *infra*. In addition, there are no allegations in the Complaint that support an unlawful seizure claim against any Defendant besides Stubblefield.

embarrassed and damaged by the illegal and unconstitutional actions taken by the Defendants to use their purported powers under color of state law to harass, threaten, damage, humiliate and embarrass his father, Alderman Benson, by alleging that Alderman Benson was a criminal, having Alderman Benson arrested, and by intentionally disseminating the groundless charges and arrest to the media so that these actions were broadcast throughout the community." [Doc. No. 1, ¶61].

Plaintiffs have set forth no facts to show that Bobby Benson, II was personally slandered or defamed. To the extent that their son could state a claim for loss of consortium, his claim is derivative of the claims alleged by Mr. Benson. Defendants' Motion for Summary Judgment on these claims is GRANTED.

### E.     Municipal Liability

Defendants move for summary judgment on the claims against the Town of Delhi. Defendants correctly argue that a municipality cannot be found liable under § 1983 under the doctrine of *respondeat superior*. *See Bolton v. City of Dallas, Tex.*, 541 F.3d 545, 548 (5th Cir. 2008). Thus, the Town of Delhi is not liable for the acts of individual Defendants who are not policymakers. Further, Mr. Benson has not offered any evidence of a policy, custom, or action of a policymaker that would give rise to municipal liability. Defendants' Motion for Summary Judgment on the claims asserted under § 1983 against the Town of Delhi is GRANTED.

### F.     Claims against the DPD

Defendants move for summary judgment on the claims against the DPD. Defendants contend that the DPD is not a separate entity from the Town of Delhi that is capable of being sued.

Federal Rule of Civil Procedure 17(b) provides that the "capacity to sue or be sued shall be determined by the law of the state in which the district court is held." FED. R. CIV. P. 17(b). "This

Court, as well as other Louisiana courts, has consistently held that a plaintiff's suit against a police department should be dismissed because the police department is not a juridical entity" capable of being sued under Louisiana law. *Martin v. Davis*, 06-1770, 2007 U.S. Dist. LEXIS 16975, at *5 (E.D. La. Mar. 8, 2007). Defendants' Motion for Summary Judgment on the claims against the DPD is GRANTED.

## III. CONCLUSION

For the foregoing reasons, the Motion for Summary Judgment [Doc. No. 24] filed by Defendants the Town of Delhi, the DPD, McKinney, Lee, and Stubblefield is GRANTED IN PART and DENIED IN PART. Defendants' Motion for Summary Judgment is DENIED with respect to the claims of Plaintiff Mrs. Benson against Defendant Stubblefield, in her individual capacity, related to the alleged unlawful seizure. Defendants' Motion for Summary Judgment is GRANTED with respect to the remaining claims, and those claims are DISMISSED WITH PREJUDICE.

MONROE, LOUISIANA, this 16 day of April, 2009.

ROBERT G. JAMES
UNITED STATES DISTRICT JUDGE